**EXHIBIT 5**

# ORIGINAL

IPA-20181120

**INSTALLMENT PAYMENT AGREEMENT**
**AGREEMENT NUMBER** ███████0007

This agreement dated as of July 17, 2019 ("Agreement Date") is between WHOA Networks Inc ("Customer"), with its principal place of business located at 7369 Sheridan Street, Suite 301, Hollywood, FL 33024, and Arrow Capital Solutions, Inc. ("Originator"), with its principal place of business located at 9201 East Dry Creek Road, Centennial, CO 80112. The words you, and your refer to Customer. The words we, us, and our refer to Originator. Originator reserves the right to void this Agreement if Originator is not in receipt of a fully executed Original this document within five (5) business days of the Agreement Date of this Agreement.

Notwithstanding anything to the contrary in the Agreement, Customer agrees to the payment terms as follows:

    Product: Cohesity Storage and Microsoft Server licenses/See Exhibit
    Product Value: $95,300.00
    Initial Term (# of Payments): 60
    Payment Frequency: Monthly
    Payment Amount: $1,954.22
    Interim Payment Daily Amount: $65.14
    First Payment Date: 30 Days After Commencement Date

The Customer certifies to Originator as follows:

**1. AGREEMENT:** For business purposes only, you have requested that we pay the Product Value for the product together with all replacements, parts, repairs, additions, and accessions incorporated therein or attached thereto and any and all proceeds of the foregoing, including, without limitation, insurance recoveries, all as described on this Agreement ("Product"), to a supplier(s) ("Supplier"), as further described in the agreement(s) between you and the Supplier and/or Product manufacturer ("Product Agreement"). You agree to all of the terms and conditions contained in this Agreement and any supplement, which (with the acceptance certification) is the entire agreement regarding the Product ("Agreement") and which supersedes any Product Agreement, order, invoice, request for proposal, response, or other related document. The terms of this Agreement may be modified and supplemented only by a written instrument signed by you and us. You authorize us to correct or insert missing Product identification information and to make corrections to your proper legal name and address. This Agreement becomes valid upon execution by us and upon payment to Supplier. If any provision of this Agreement is declared unenforceable in any jurisdiction, the other provisions herein shall remain in full force and effect in that jurisdiction and all others. TIME IS OF THE ESSENCE WITH RESPECT TO THE OBLIGATIONS OF CUSTOMER UNDER THE AGREEMENT.

**2. ACCEPTANCE; PAYMENTS; TAXES; FEES:** This Agreement shall begin on the date ("Acceptance Date") set forth in the acceptance certification ("COA") which will be executed by you in connection with this Agreement. By executing the COA, you hereby certify that all of the Product subject to the Agreement and as to which the Payments relate has been inspected and accepted by you. The term of this Agreement shall begin on the first day of the month next succeeding the Acceptance Date ("Commencement Date") and shall continue for the Initial Term as set forth above. Payments start on the First Payment Date and continue thereafter on the first day of each Payment Frequency period as outlined above. In addition to the Payments, you agree to pay an interim payment for the period starting on the Acceptance Date to the Commencement Date at a daily rate equal to the Interim Payment Daily Amount set forth above. This Agreement cannot be canceled or terminated by Customer except as expressly provided herein. You will pay all Payments when due. Customer agrees to pay when due all taxes, assessments, levies, imposts, duties and charges, of any kind or nature, imposed upon the Product or for its use or operation or upon this Agreement. Customer acknowledges that the Payments are accurate and undisputed. CUSTOMER AGREES AND ACKNOWLEDGES THAT ITS OBLIGATION TO MAKE EACH OF THE PAYMENTS IS ABSOLUTE AND UNCONDITIONAL AND SHALL BE MADE WITHOUT ANY ABATEMENT, SETOFF, CLAIM, COUNTERCLAIM, ADJUSTMENT, REDUCTION OR DEFENSE OF ANY KIND. At our option, we may discharge taxes, assessments, levies, imposts, duties and charges, of any kind or nature, imposed upon the Product, and you agree to reimburse us upon demand and to pay us a processing fee for each expense or charge we pay on your behalf. You agree to pay us a documentation fee to cover us for all closing costs. We will have the right to apply all sums received from you to any amounts due and owed to us under the terms of this Agreement. If for any reason any Payment is returned for insufficient funds, you will pay us a fee of $35 (but in no event may such fee exceed the highest charge permitted by applicable law). If any Payment or other amount payable in the Agreement is not paid within 5 days of its due date, Customer shall pay on demand, as a late charge, an amount equal to 10% of the amount then due (but in no event may such late charge exceed the highest late charge permitted by applicable law). We may make a profit on any fees and charges paid under this Agreement to cover us for our operational expenses.

**3. ASSIGNMENT:** Customer agrees that Originator or its Assignee may sell, assign, transfer, or grant a security interest in some or all of its rights and remedies under the Agreement including the Payments and the right to collect Payments to an assignee ("Assignee") without notice or the consent of Customer. Customer agrees that if Originator sells, assigns, transfers, or grants a security interest, Assignee will have the same rights and benefits that Originator has now and will not have to perform any of Originator's obligations. Customer agrees that Assignee will not be subject to any claims, defenses, or offsets that Customer may have against Originator. Customer shall cooperate with Originator in executing any documentation reasonably required by Originator or Assignee to effectuate any such assignment. CUSTOMER HAS NO RIGHT TO SELL, TRANSFER, LEASE, ASSIGN OR IN ANY WAY DISPOSE OF ALL OR ANY OF CUSTOMER'S RIGHTS OR OBLIGATIONS UNDER THIS AGREEMENT, THE PRODUCT, OR THE PRODUCT AGREEMENT.

**4. INSURANCE; INDEMNITY; LOSS OR DAMAGE:** Customer agrees to keep the Product fully insured against risk and loss, with Originator or its Assignee as lender's loss payee, in an amount not less than the original Product Value until this Agreement has been paid in full. Customer agrees to provide Originator or its Assignee certificates or other evidence of insurance acceptable to Originator or its Assignee. Originator and its Assignee are not responsible for, and Customer agrees to hold Originator and its Assignee harmless and reimburse them for and to defend on Originator's or its Assignee's behalf against, any claim for any loss, expense, liability or injury caused by or in any way related to delivery, installation, possession, ownership, use, condition, inspection, removal, return, or storage of the Product. Customer is responsible for the risk of loss or for any destruction of or damage to the Product. Customer agrees to promptly notify Originator and its Assignee in writing of any loss or damage. If the Product is destroyed and Originator or its Assignee have not otherwise agreed in writing, Customer will pay to Originator or its Assignee the unpaid balance of this Agreement. Any proceeds of insurance will be paid to Originator or its Assignee and credited, at its option, against any loss or damage. All indemnities will survive the expiration or termination of this Agreement.

**5. WARRANTY DISCLAIMERS:** CUSTOMER AGREES THAT CUSTOMER HAS SELECTED THE SUPPLIER AND PRODUCT BASED UPON CUSTOMER'S OWN JUDGMENT AND CUSTOMER DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY ORIGINATOR. ORIGINATOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, OF, AND TAKES ABSOLUTELY NO RESPONSIBILITY FOR, MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, CONDITION, QUALITY, ADEQUACY, TITLE, DATA ACCURACY, SYSTEM INTEGRATION, FUNCTION, DEFECTS, OR ANY OTHER ISSUE IN REGARD TO THE PRODUCT. CUSTOMER WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST ANY SUPPLIER OR MANUFACTURER.

**6. SECURITY INTEREST:** Customer grants Originator or its Assignee a security interest in the Product to secure all amounts Customer owes Originator or its Assignee under the Agreement with Customer. Customer authorizes Originator or its Assignee to file a financing statement (UCC-1). We may charge you a fee for filing, searching and/or lifting costs required by the Uniform Commercial Code (UCC) or other laws. Customer shall not change its legal name, state of organization, headquarters or residence without providing prior written notice to Originator or its Assignee so that they may amend or file a new UCC-1. Customer will notify Originator or its Assignee within 30 days if Customer's state of organization revokes or terminates its existence.

**7. USE; MAINTENANCE; LOCATION OF PRODUCT:** Originator agrees that so long as no Event of Default has occurred, and is occurring, under the Agreement, Customer may quietly possess the Product subject to and in accordance with the rights and obligations of the Agreement. At your expense, Customer shall: (i) use the Product in accordance with the terms of the Product Agreement, and in compliance with applicable manufacturers' and regulatory standards; (ii) keep the Product in retail re-saleable condition, full working order, and complete repair; (iii) not permit any lien, security interest, pledge or other encumbrance or attachment of any kind whatsoever upon the Payments or the Product; (iv) not assign any of its rights or obligations without the prior written consent of Originator or its Assignee under the Agreement; and (v) pay when due or reimburse Originator or its Assignee on demand for all costs of collection of any of the Payments and all other out-of-pocket expenses (including in each case all reasonable attorneys' fees) incurred by Originator or its Assignee, including expenses incurred in any litigation or bankruptcy or insolvency proceedings; and (vi) keep the Product at your address shown on the Agreement, and you agree not to move it unless we agree in writing.

**8. INSPECTIONS; REPORTS:** We will have the right, at any reasonable time, to inspect the Product and any documents relating to its use, maintenance and repair. With reasonable promptness, Customer shall furnish Originator or its Assignee with such information, financial or otherwise, relating to Customer or the Product as Originator or its

Assignee shall reasonably request to determine your current financial condition and faithful performance of the terms hereof. This may include: (i) compiled, reviewed or audited annual financial statements (including, without limitation, a balance sheet, a statement of income, a statement of cash flow, a statement of changes in equity and notes to financial statements) within 120 days after your fiscal year end, and (ii) management-prepared interim financial statements within 45 days after the requested reporting period(s). Such statements shall set forth the corresponding figures for the prior fiscal year in comparative form, all in reasonable detail without any qualification or exception deemed material by us. Unless otherwise accepted by us, each financial statement submitted to us shall be prepared in accordance with generally accepted accounting principles consistently applied and shall fairly and accurately present your financial condition and results of operations for the period to which it pertains and certified by Customer's chief financial officer, and, in the case of annual financial statements, certified by an independent accounting firm acceptable to Originator or its Assignee.

9. DEFAULT; REMEDIES: (A) Any of the following shall constitute an "Event of Default": (i) Customer fails to pay any Payment or other amount payable under the Agreement when due and such failure continues for 5 days after written notice to Customer of such failure; (ii) Customer fails to comply with any other obligation and such failure is not cured within 10 days after written notice to Customer; (iii) Customer shall default in the payment or performance of any other obligation or indebtedness to Originator, Assignee, or any third party, including, but not limited to, Customer's obligations under the Product Agreement; (iv) Customer merges or consolidates with, or sells all or a substantial portion of its assets to, a third party, or a majority of the ownership interests or membership of Customer's Board of Directors changes from the ownership or composition as of the Agreement Date; (v) Customer or any guarantor suffers a material adverse change in its financial condition from the date hereof; or (vi) Customer makes or has made any false statement or misrepresentation to Originator or Assignee. (B) Upon and during the continuance of an Event of Default: (i) Originator may terminate Customer's rights to use the Product, require the Customer to return the Product in accordance with the terms and conditions of this Agreement, and require Customer deliver to us documentation executed by your duly-authorized officer certifying that you have complied with the above requirements, have ceased your use of the Product, and have not retained the Product in any form; (ii) upon demand Customer will pay to Originator or its Assignee an amount equal to the sum of (a) all Payments then due, if any, and (b) the present value of all remaining Payments to become due in the future discounted at a rate of 2% per annum; (iii) Originator may cancel, terminate, or cause the Supplier and/or Product Manufacturer to cancel and/or terminate, providing maintenance and/or support for the Product; and (iv) Originator or Assignee, as applicable, shall have all other rights and remedies available under Article 9 of the Uniform Commercial Code and any other law or in equity.

10. ORIGINAL DOCUMENT: There shall be one original of this Agreement and it shall be marked "Original". To the extent that this Agreement constitutes chattel paper (as that term is defined by the Uniform Commercial Code), a security interest may be created only in the Agreement marked "Original." At our option, a fax, scanned, or electronic version of this Agreement with an authorized signature may be considered the original and will be binding on all parties for all purposes. Customer agrees that the electronic version of this Agreement has been authenticated by Customer in accordance with applicable law (and pursuant to the rules and regulations of DocuSign Inc.) and shall constitute the "Original" authoritative version of this Agreement as referenced above and will be binding on all parties for all purposes; provided, however, that in the event that Originator prints on paper the authenticated electronic version of the Agreement, the Customer agrees that such paper version that has been marked "Original" by Originator shall constitute the sole original authoritative version of this Agreement.

11. LAW; JURY WAIVER: This Agreement will be governed and construed in accordance with the laws of the State of New York. You consent to jurisdiction and venue of any state or federal court in New York and waive the defense of inconvenient forum. Customer and Originator or its Assignee each WAIVES ANY RIGHT TO TRIAL BY JURY in any action arising from or related to the Agreement. No course of dealing between Customer and Originator or its Assignee or any delay or omission on the part of Originator or its Assignee in exercising any rights hereunder shall operate as a waiver of any rights of Originator or its Assignee. A waiver on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion. No waiver or consent shall be binding upon Originator or its Assignee unless it is in writing and signed by Originator or its Assignee.

12. USA PATRIOT ACT NOTICE: To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each customer who opens an account. When you enter into a transaction with us, we ask for your business name, address and other information that will allow us to identify you. We may also ask to see other documents that substantiate your business identity.

ACCEPTED AND AGREED:

By signing below, Customer and Originator certify that they have reviewed and do agree to all terms and conditions of this Agreement. THIS AGREEMENT HAS BEEN DULY AUTHORIZED AND DULY EXECUTED BY THE PARTIES HERETO AND SHALL BE LEGALLY BINDING UPON BOTH PARTIES AS OF THE AGREEMENT DATE SET FORTH ABOVE.

Customer: WHOA Networks Inc

Customer By: *[signature]*
Customer Name: MARK AMARANT
Customer Title: CEO

Originator: Arrow Capital Solutions, Inc.

Originator By: *[signature]*
Originator Name: Barry Bryan
Originator Title: Manager, Business Operations

# ORIGINAL

EXA-20161120

**EXHIBIT TO AGREEMENT**
**AGREEMENT NUMBER** ▮▮▮▮0007

**DESCRIPTION AND LOCATION OF PRODUCT:** 7359 Sheridan Street, Suite 301, Hollywood, FL 33024

(1)  Cohesity Storage - C4300-SFP 36TB Hyperconverged 3-Node Block, includes:
     COHESITY DATAPLATFORM STANDARD EDITION
     SUBSCRIPTION
     Support - CS-P-C4300-SFP-3

(10) Cohesity - 10G SHORT-RANGE OPTICAL SFP+ ADAPTER - ADP-SFP-10G-SR

(2)  MICROSOFT SQL SERVER ENTERPRISE CORE LICENSES

(2)  MICROSOFT SQL SERVER STANDARD CORE LICENSES

Exhibit to Agreement Customer Initials _[signature]_

Page 1 of 1