

# MASTER EQUIPMENT FINANCING AGREEMENT
Date: 7/13/18

Customer # 8973-E

| CREDITOR: | DEBTOR: |
|---|---|
| WESTERN EQUIPMENT FINANCE, INC. | HIPSKIND TECHNOLOGY SOLUTIONS GROUP, INCORPORATED DBA: HIPSKIND |
| PO BOX 640, 503 HIGHWAY 2 WEST | 17W220 22ND ST STE 450 |
| DEVILS LAKE ND 58301 | OAKBROOK TERRACE IL 60181 |
| | FEDERAL TAX ID # |

The words "you" and "your" refer to the "Debtor." The words "we", "us" and "our" refer to the "Creditor" and in the case of each Agreement, its successors and assigns.

**1. SECURITY AGREEMENT:** Subject to the terms of this Master Equipment Financing Agreement ("Master Agreement"), we agree to provide financing to you, secured by items of collateral ("Collateral") described in any schedule executed in connection herewith (each, a "Schedule"). Each Schedule shall constitute a separate and enforceable agreement incorporating all the terms of this Master Agreement (each Schedule, together with this Master Agreement as it relates to such Schedule, is referred to herein as an "Agreement"). You hereby grant us a security interest under the Uniform Commercial Code ("UCC") in the Collateral to secure all of your obligations to us now existing or hereafter arising under this Agreement and any present and future agreements with us or any of our affiliates (collectively, the "Obligations"). You shall insure that such security interest is and shall remain a sole first security interest and free of any other security interest, lien or encumbrance ("Liens"). This Master Agreement is not a legal commitment to enter into any Schedule and, after executing a Schedule, we shall have no obligation to finance any Collateral until all conditions to funding are completed to our satisfaction.

**2. TERM:** The term of each Agreement shall commence upon the earlier of the following dates (the, "Commencement Date"): (a) the date we first make payment to the supplier of the Collateral ("Supplier"); (b) the date reflected on a Collateral Acceptance executed by you or (c) upon our written acceptance of this Agreement and shall terminate on last day of the term stated in the Schedule unless such term is extended or otherwise modified. Your Obligations shall end upon full performance and observance by you of each and every term, condition and covenant set forth in this Agreement. Payments under each Agreement commence on either the 5th, 15th, or 25th day of the month following the Commencement Date. You agree to pay to us a prorated payment in the amount equal to 1/30th of the monthly payment multiplied by the number of days lapsing between the Commencement Date and the first payment date. Scheduled payments will be due on the same day of each period as referenced on the Schedule. You promise to pay us scheduled payments without the need of an invoice.

**3. TAX AND INDEMNITY:** You agree to pay when due all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Collateral.

**4. LOCATION, USE AND RETURN:** You agree that (a) you shall, and we are under no obligation to, ensure that the Collateral (i) is located at the address stated in the Schedule, or such other location approved by us in writing, and will not be removed therefrom without our prior written consent; (ii) remains separate, identifiable personal property; (iii) is delivered, installed, tested, adjusted, maintained, serviced, and kept in good condition, except for ordinary wear and tear; (iv) is free and clear of Liens; and (v) is used by qualified personnel in compliance with all manufacturer's instructions or requirements, and all laws, regulations and/or insurance policies; (b) ANY CHANGE IN LOCATION OF COLLATERAL REQUIRES ADVANCE WRITTEN CONSENT FROM US; (c) you will not alter or add to the Collateral without our prior written consent; (d) we or our agent have the right to inspect and/or test the Collateral wherever located, and you shall make the Collateral available at any time for the same; (e) upon your default of this Agreement for any reason, we may enter and remove the Collateral wherever located without notice or liability to you; (f) at your own cost and expense, you will keep the Collateral eligible for any manufacturer's certification in compliance with all applicable laws and in good condition, except for ordinary wear and tear.

**5. ASSIGNMENT:** Without our prior written consent, you shall not assign, transfer, pledge, hypothecate, sublet or lend the Collateral, and any such assignment, transfer, or use shall be deemed a default hereunder. For purposes of this Agreement, a change of control of the ownership of Debtor for any reason shall be considered an assignment of this Agreement. You acknowledge that we may sell and/or assign, in whole or part, our interest in any Agreement without notice to you and that each Schedule, together with this Master Agreement constitutes a separate assignable Agreement. Upon the assignment of this Agreement, our assignee shall be entitled to exercise any and all rights and remedies available to us hereunder. You agree that you will not assert against our assignee any defense or counterclaim or setoff on account of claims you might have against us in any action for payments or possession brought by our assignee. You also agree to settle all claims with respect to the Collateral directly with the Supplier, and you acknowledge that we and our assignee(s) shall not be liable for such service or other claims. Notwithstanding the foregoing or anything herein to the contrary, any Agreement assigned to an assignee that is not affiliated with us shall not be cross-defaulted or cross-collateralized with any Agreement retained by us.

**6. INSURANCE, LOSS AND DAMAGE:** You are responsible for and bear the risk of loss, theft, destruction or damage to the Collateral (collectively "Loss") from any cause whatsoever, whether or not insured. No such Loss will relieve you of any obligation under this Agreement. During the term of this Agreement, you agree to obtain and maintain, at your expense, property insurance protecting the Collateral against loss, theft, destruction or damage in an amount not less than its full replacement value, naming us as loss payee on a "Lenders Loss Payable" endorsement (collectively "Required Insurance"). You must provide us satisfactory written evidence of Required Insurance within thirty (30) days of the commencement of this Agreement or any subsequent written request by us. If you do not do so, we may obtain insurance from an insurer of our choosing in such forms and amounts as we deem reasonable to protect our interests (collectively "Equipment Insurance"). Equipment Insurance will cover the Collateral and us; it will not name you as an insured and may not cover all of your interest in the Collateral. You agree to pay us periodic charges for Equipment Insurance (collectively "Insurance Charges") that include: a premium that may be higher than if you maintained the Required Insurance separately; a finance charge of up to 1.5% per month on any advances made by us or our agents; and, commissions, billing and processing fees; any or all of which may generate a profit to us or our agents. If you fail to provide satisfactory evidence of Required Insurance by the due date, we also may pay Insurance Charges by debiting your account under any previously authorized automatic payment. We shall discontinue billing or debiting Insurance Charges for Equipment Insurance upon receipt of satisfactory evidence of Required Insurance. You must promptly notify us of any loss or damage to Collateral which makes any item of Collateral unfit for continued or repairable use. You hereby irrevocably appoint us as your attorney-in-fact to execute and endorse all checks or drafts in your name to collect under any Required Insurance. We may apply proceeds from Required Insurance to the Obligations as we deem appropriate.

**7. LATE CHARGES.** In the event you shall fail to pay any amount required to be paid to us within ten (10) days of the demand or due date, you shall also pay to us a late payment charge of the greater of $25.00 or fifteen percent (15%) of any amount owing hereunder and not paid when due. You shall also pay to us a payment processing charge of $25.00 for any payments made by a method other than by check or pre authorized payment. If, for any reason, your check is returned to us, or a request for payment pursuant to a pre authorized payment agreement is not honored due to insufficient funds in the subject account, a $25 fee will be charged to you.

**8. DEFAULTS AND REMEDIES:** If any of the following events should occur (an "Event of Default"), this Agreement, and any other Agreement with us, can be

declared in default at our sole discretion: (i) you ___ pay any amount owing hereunder when due, or to pe ___ any Obligations related to this Agreement, or any other agreement with us or our affiliates; you default under any material third party agreement; (iii) any representation made by you shall be determined to be false; (iv) the Collateral is seized or levied upon under any legal or governmental process; (v) you (or any guarantor of your Obligations hereunder) make an assignment for the benefit of its creditors, or become subject to any proceedings under the U.S. Bankruptcy Code or any state reorganization, receivership, insolvency or dissolution proceedings; or (vi) we, in our good faith judgment, deem our self insecure to your financial condition, legal entity structure, or performance under this Agreement, or any Agreement with us. Upon an Event of Default, we may, at our sole discretion, exercise one or more of the following remedies, without any further notice to you: (a) demand that you, at your expense, return the Collateral to a location designated by us, in good condition and repair; (b) without liability or cost to us, enter into your premises and remove the Collateral, and store and/or dispose of the Collateral at its then existing location(s); (c) demand that you pay to us the present value of the remaining scheduled payments and other amounts then due and past due under this Agreement, together with interest thereon from the date of default at the default interest rate of 1.5% per month; (d) collect from you all expenses, including reasonable attorney's fees, in connection with an Event of Default, or the enforcement of the remedies hereunder; (e) any other rights or remedies permitted by law. Notwithstanding any return, reletting, sale and/or repossession of any unit of the Collateral, you shall remain fully liable for the performance of your Obligations, and none of our rights or remedies shall be impaired. You release us from any requirement to post a bond or surety regarding any repossession or disposition of the Collateral. You grant us a security interest and right of setoff against all deposits, account balances and credits with or due from us or any property in which we have or acquire a separate security interest (and/or our affiliates) now existing or hereafter arising, and all proceeds thereof. We shall have the right to seek a deficiency from you following our abandonment or disposition of the Collateral after crediting against your obligations hereunder the net proceeds of any sale of the Collateral and/or the present value of any scheduled payments should we finance any of the Collateral. For purposes of computing present value the discount rate shall be 3%.

**9. NOTICES, FINANCIALS, AND DOCUMENTATION:** Service of all notices under this Agreement shall be sufficient if given personally or mailed to us at the address set forth below, or to you at your address set forth above or at such other address as a party may provide in writing from time to time. Any notices required by this Agreement shall be deemed to be delivered when a record properly directed to the intended recipient has been (a) deposited with the US Postal Service, (b) transmitted by facsimile, (c) transmitted through the Internet, or (d) has been personally delivered. During the term of this Agreement, you shall promptly furnish to us, in a form satisfactory to us, current financial and income statements, securities filings, and all other documents that we deem necessary to evidence and protect our rights or interest hereunder. You will promptly take such further action as we may request in order to more effectively carry out the intent and purpose of this Agreement.

**10. REPRESENTATIONS, WARRANTIES AND COVENANTS:** You acknowledge, agree, certify, represent and warrant that (a) **THIS AGREEMENT CANNOT BE TERMINATED OR CANCELED**; (b) <u>**YOUR PAYMENT OBLIGATIONS HEREUNDER ARE ABSOLUTE AND UNCONDITIONAL AND PAYMENTS CANNOT BE WITHHELD, SETOFF OR REDUCED FOR ANY REASON**</u>; (c) you may not prepay any Obligations without our prior written consent; (d) you bear all risks regarding the Collateral; (e) this Agreement and the Collateral is solely for business or commercial use, and the Collateral may not be used for consumer or household purposes; (f) you will give us prior notice of any changes in your name, state of organization; (g) the liability of multiple Debtors shall be joint and several; (h) our delayed or partial exercise of any right or remedy shall not preclude any further exercise thereof; (i) there are no pending or threatened claims, undisclosed matters, or changes of any kind, which could materially or adversely affect your ability to meet your Obligations herein; (j) no salesman or agent of the Supplier is authorized to waive or alter any term or condition of this Agreement and no representation as to the Collateral or any matter by the Supplier shall in any way effect your duty to make the payments and perform other obligations as set forth in this Agreement; (k) you shall not suspend your business, sell or dispose of a substantial part of your assets, enter into a reorganization unless you are the surviving entity, or transfer your assets outside the United States of America; (l) you shall not permit a Blocked Person to have an ownership interest in or control of Debtor. As used herein, "Blocked Person" means any person or entity that is now or at any time hereafter (x) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list, or (y) whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law, including any executive order of any branch or Department of the United States government or (z) otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over us, to be a person with whom the relationship created by, or transactions arising under this Agreement result in penalties against us or limitations on our ability to enforce its rights and remedies under this Agreement.

**11. INDEMNITY:** We are not responsible for any injuries, damages, penalties, claims or losses, including legal expenses incurred by you, or any other person caused by the installation, manufacture, selection, purchase, lease, ownership, possession, maintenance, condition, use, return or disposition of the Collateral. You agree to reimburse us and any assignee for any liabilities, costs or expenses (including attorney's fees) incurred by us in connection with this Agreement, and to defend us against any claims for such injuries, damages, penalties, claims or losses.

**12. SECURITY DEPOSIT:** The security deposit is non-interest bearing and is to secure your performance under this Agreement. Any security deposit made may be applied by us to satisfy any amount owed by you, in which event you will promptly restore the security deposit to its full amount as set forth in the Schedule. If all conditions herein are fully complied with, all payments have been received and provided you have not ever been in default of this Agreement, the security deposit will be refunded to you.

**13. MISCELLANEOUS:** Subject to the limitations herein, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, administrators, successors and assigns. This Agreement or any Schedule may be executed in any number of counterparts, which together shall constitute a single instrument. This Master Agreement and each Schedule constitutes the entire agreement between the parties with respect to the Equipment described in the Schedule and matters relating thereto. No oral agreement, guaranty, promise, condition, representation or warranty shall be binding on us. All prior conversations, agreements or representations related hereto and/or to such Equipment are integrated herein. No modification hereof shall be binding unless in writing and signed by us. The terms of this Agreement shall be severable and if any term thereof is declared invalid, in whole or in part, this Agreement shall continue in full force and effect as if such invalid term were not originally included herein. All of your indemnity and reimbursement obligations hereunder and all rights, benefits and protections provided to us by warranty disclaimers shall survive the cancellation, expiration or termination of this Agreement.

**14. COUNTERPARTS, ELECTRONIC SIGNATURES AND DOCUMENTS:** This Master Agreement and any Schedule may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same agreement. Both you and we hereby agree that this Agreement may be authenticated by electronic means, or by signature transmitted by facsimile or other electronic transmission. To the extent that this Agreement has been manually executed by Creditor, only a Schedule bearing the original signature of the Creditor shall constitute the "original" thereof for purposes of possession of tangible chattel paper in accordance with the UCC. You agree that an electronic version of a Schedule that has been authenticated by you and us and controlled by us in accordance with applicable law (or any assignee identified pursuant to Section 5 hereof) shall (pursuant to the rules and regulations of eOriginal, Inc. or similar rules promulgated by any successor electronic custodian) constitute the original authoritative version of this Agreement; provided that if the "Paper Out" process shall have occurred pursuant to the eOriginal Product Reference Guide (or any similar rules or guide promulgated by a successor electronic custodian), and there shall simultaneously exist both the "Paper Out" printed version and an electronic version of this Agreement, then the "Paper Out" printed version of this

INITIAL HERE
Customer # ___ 8973-E

Agreement as identified in the eOriginal audit reco___ d corresponding affidavit shall constitute the sole "auth___ive copy" as referenced in Section 9-105 of the UCC. Both you and we expressly consent to the use of the electronic version of this Agreement to embody the entire agreement and the understanding between you and us, and, in such case, we may destroy the paper original and rely on the electronic version. Reference herein to eOriginal shall mean eOriginal, Inc., Baltimore, MD, or any successor electronic custodian appointed by us. You agree that a copy of this Agreement may be introduced in lieu of the original thereof and without further foundation and further agree not to raise as a defense to the enforcement of this Agreement that you executed or authenticated by electronic or digital means or used facsimile or other electronic means to transmit your signature on such Agreement. Notwithstanding anything to the contrary herein, we reserve the right to require you to sign any document manually and to deliver to us an original of such document.

**15. DISCLAIMER OF WARRANTY.** WE MAKE NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE COLLATERAL, OR ANY OTHER REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER. You unconditionally and irrevocably waive all rights and remedies against us, and we shall not be liable to you for any matter relating to the order, purchase, selection, manufacture, delivery, installation, operation, or service of the Collateral or the Supplier. We are not a manufacturer or supplier, nor do we endorse, any item of the Collateral, and we are not bound by any promises made by any manufacturer, supplier, or distributor of the Collateral.

**16. APPLICABLE LAW AND VENUE:** ALL MATTERS INVOLVING THE CONSTRUCTION, VALIDITY, PERFORMANCE, OR ENFORCEMENT OF THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NORTH DAKOTA. YOU CONSENT TO THE PERSONAL JURISDICTION OF THE COURTS OF THE STATE OF NORTH DAKOTA AND THAT ALL LAWSUITS COMMENCED BY YOU AGAINST US MUST BE FILED IN SUCH COURTS. YOU AGREE THAT AT OUR SOLE OPTION, JURISDICTION AND VENUE (LOCATION) FOR ANY DISPUTE, SUIT OR ACTION ARISING UNDER OR RELATING TO THIS AGREEMENT, SHALL BE IN RAMSEY COUNTY, STATE OF NORTH DAKOTA. THE PARTIES EACH WAIVE THEIR RIGHT OF JURY TRIAL.

**17. LIMITED PREARRANGED AMENDMENTS; AUTHORIZATION:** In the event it is necessary to amend this Agreement to correct an obvious error or to reflect a change in one or more of the following: (a) our actual cost of procuring the Equipment, or (b) our actual cost of providing the Equipment to you, or (c) a change in payments as a result of (a) or (b) above or (d) description of the Equipment, you agree that any such amendment may be described in a letter from us to you, whereupon this Agreement shall be deemed amended and such amendments shall be incorporated in this Agreement herein as if originally set forth.

**18. TIME OF THE ESSENCE:** Time is of the essence of this Agreement, and this provision shall not be impliedly waived by the acceptance on any occasion of late or defective performance.

**19. AGREEMENT ACCEPTANCE:** Your signature on a Schedule will bind you to the terms of this Agreement. However, we will not be bound until we accept manually by signing a Schedule or by funding the Agreement, whichever occurs first.

**DEBTOR:** HIPSKIND TECHNOLOGY SOLUTIONS GROUP, INCORPORATED DBA: HIPSKIND
Complete Legal Name of Debtor

_____ CEO    07/15/18
Authorized Signature of Debtor    Title    Date

MARK AMARANT
Printed Name

Phone: 630-468-5935    Email: Mark.amaran@hipskind.com

**20. DEBTOR RESOLUTION:** The undersigned, do hereby certify that: The complete and correct name of the legal entity is listed under the Agreement Acceptance section and the person(s) whose signatures appears as the Authorized Signature ("Authorized Signatory") may enter into any agreements of any nature with us, and those agreements will bind the legal entity. Specifically, but without limitation, the Authorized Signatory is authorized, empowered, and directed on behalf of the legal entity to execute and deliver to us the equipment finance agreement, promissory note or notes, lease documents, or other evidence of the legal entity's credit accommodations, on our forms, at such rates of interest and on such terms as may be agreed upon, evidencing the sums of money so borrowed or any of the legal entity's indebtedness to us and also to execute and deliver to us one or more renewals, extensions, modifications, refinancings, consolidations, or substitutions for one or more of the notes, any portion of the notes, or any other evidence of credit accommodations. The Authorized Signatory is duly elected, appointed, or employed by or for the legal entity, as the case may be, and occupies the position set opposite his or her respective name. This Resolution now stands of record on the books of the legal entity, is in full force and effect, and has not been modified or revoked in any manner whatsoever and shall apply to all future Schedules and each Agreement arising hereunder unless and until revoked in writing delivered to Creditor. IN TESTIMONY WHEREOF, we have hereunto set our hand and attest that the signature set opposite the name listed is his or her genuine signature.

**CERTIFIED TO AND ATTESTED BY** Authorized Signer for Debtor (other than Authorized Signature under Agreement Acceptance):

By: _____    Richard Gettino    Controller
    Signature              Printed Name         Title

---

**U. S. PATRIOT ACT DISCLOSURE NOTICE: IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT**
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you is that: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**CREDITOR:** WESTERN EQUIPMENT FINANCE, INC.
By: _____ Sr Credit Analyst  7.18.18
Authorized Signature of Creditor    Title    Date

**Address:** 503 Highway 2 West, Devils Lake, ND 58301

Customer # ___8973-E